IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN COPELAND | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| READING POLICE DEPARTMENT, | : | NO. 06-4267 |
| CHARLES BROAD, & | : | |
| IVAN MARTINEZ | : | |

**MEMORANDUM: RE SUMMARY JUDGMENT**

**Baylson, J.**                                                                                                           **August 21, 2008**

**I.      Introduction**

This action alleging police misconduct is before the Court on Defendant's Motion for Summary Judgment. Plaintiff brings several claims against the Reading Police Department[1] ("RPD"), Chief of Police Charles Broad ("Chief Broad"), and Detective Ivan Martinez ("Detective Martinez"). In Count I, Plaintiff alleges that Defendants violated his Fourth and Fourteenth Amendment Right to be free from unreasonable searches and seizures when Detective Martinez arrested him without probable cause on April 22, 2004. In Count II, Plaintiff alleges the same constitutional violation, raising a claim under 42 U.S.C. § 1983. In Count III, Plaintiff

---

[1] While Plaintiff has named the Reading Police Department in its Revised Third Amended Complaint, the City of Reading is the proper party subject to suit in this action. See Baldi v. Philadelphia, 609 F. Supp. 374, 377 (E.D.Pa. 1995) (dismissing claims against Philadelphia Police Department because Department was not separate corporate entity from city so as to permit it to be sued for civil rights violations); Duvall v. Bureau of Oxford, 1992 WL 59163 (E.D.Pa. Mar. 19, 1992) (dismissing the Oxford County Police Department and the Chester County Prison as Defendants in a § 1983 suit because these Defendants have no separate corporate existence from the Oxford Bureau and Chester County). The Court will therefore consider Plaintiff's claim against the RPD as a claim against the municipality, the City of Reading.

alleges that he was the victim of malicious prosecution by Defendants, who improperly and maliciously initiated a criminal proceeding against him, which began with his arrest on April 22, 2004, and ended when all charges against him were dismissed on November 17, 2004. Plaintiff asks for $500,000 in punitive and compensatory damages, as well as attorneys' fees and costs.

For the following reasons, the Defendants' Motion for Summary Judgment is granted.

**II.   Background**

    **A.   Factual Background**

On March 19, 2004, at approximately 3:15 AM, Officer Christopher Jenkins of the RPD was dispatched to the scene of a theft of property from a van. The victim of the theft, Mark Renninger, was inside his home when he heard the sound of breaking glass and observed a person running from his van carrying his 4 level[2] and a red Milwaukee Sawzall box. The officer observed that the front passenger side window of Renninger's van had been smashed.

At approximately 6 AM on the same morning, Raimond Rodriguez and Chad Fisher picked Plaintiff up at the bus stop at 9th and Buttonwood Streets. Plaintiff claims that Rodriguez offered him a ride, but told him that he needed money for gas and planned to stop at the A-Plus convenience store ("Convenience Store") first. Rodriguez and Fisher had been driving around in the car for several hours, and had been drinking. (Martinez Depo. at p. 14). Plaintiff claims that when they reached the parking lot of the Convenience Store, Rodriguez and Fisher began to prepare to smoke crack. According to Plaintiff, Fisher also tried to sell the oriental rug in the backseat of the car to the clerk at the Convenience Store. The clerk declined to purchase the rug, and instead called the police.

---

[2] A 4 level is a type of tool used for establishing a horizontal plane.

Sometime after 6 AM, Officers Jenkins, and Courtesis were dispatched to the Convenience Store to investigate suspicious males sitting outside the store in a parked car. Upon arriving at the scene, the officers identified the driver as Raimond Rodriguez, the front seat passenger as Chad Fisher, and the backseat passenger as Plaintiff, Kevin Copeland. The officers subsequently learned that Rodriguez had an outstanding warrant for operating a car without a license and Fisher had an outstanding burglary warrant. Plaintiff had an outstanding civil bench warrant. The officers contacted the sheriff regarding Plaintiff's warrant, and were told that Plaintiff should only be taken into custody if he were "problematic." (Def.'s Statement of Undisputed Facts at ¶ 7).

The officers then contacted Heather Weand, the owner of the car and Rodriguez's girlfriend, who came to the scene. Weand told the officer that she did not know who Plaintiff was and did not want him in her car. Plaintiff was then released from the scene.

Defendants allege that upon questioning, Weand told the officers that the table in the backseat of the car did not belong to her. Weand then voluntarily opened the trunk where the officers observed several tools, including a red Milwaukee Sawzall box and a 4 level, matching the description of the items which Mr. Renninger had reported stolen earlier that morning. Rodriguez told the officers that when he picked up Plaintiff, Plaintiff had the tools in his possession and that Plaintiff had placed the tools in the trunk.

Plaintiff does not specifically deny this sequence of events, beginning with police questioning of Weand, but claims that Officers Courtesis and Jenkins completed their reports of the incident subsequent to their conversation with Officer Martinez and therefore that there is a factual dispute as to whether these reports were tainted by Defendant Martinez's findings. (Pl.'s

3

Resp. to Def.'s Statement of Undisputed Facts at ¶ 27).

Weand's car was taken to the police station. The investigation of the alleged robbery of Mr. Renninger's tools was assigned to Detective Martinez, an 18-year veteran at the RPD. In the course of the investigation, Martinez re-interviewed Rodriguez, who gave a sworn statement that the tools in the trunk of Weand's car had been in Plaintiff's possession when Rodriguez picked him at the bus stop and that Plaintiff had placed the tools in the trunk. Detective Martinez then interviewed Fisher, who also stated that the tools had been in Plaintiff's possession. Fisher further claimed that Plaintiff had brought a marble table into the car. (Pl's Resp. to Def.'s Statement of Undisputed Facts, ¶ 14). Fisher did not provide a sworn statement. The victim, Mr. Renninger, came to the police station and confirmed that the tools recovered from Weand's car were the ones that had been stolen from his own car.

Based on a 16-hour investigation of the incident, Detective Martinez prepared an affidavit and criminal complaint charging Plaintiff with receiving stolen property. These documents were reviewed and approved by a District Justice. Plaintiff was served with the arrest warrant on April 22, 2004, at which time he was incarcerated at the Berks County Prison for a parole/probation violation. At a subsequent preliminary hearing, the charges against Plaintiff were bound over to the Court of Common Pleas of Berks County.

At a pre-trial hearing on November 17, 2004, Rodriguez was called as a witness against Plaintiff, but refused to testify on the grounds that his testimony would tend to incriminate him. The charges against Plaintiff were dismissed.

At the time of this incident, Charles Broad was the Chief of the Reading Police Department. However, Plaintiff admits that Chief Broad played no role in his arrest or

prosecution.

It is undisputed that Officer Martinez had some limited relationship with Rodriguez, prior to his investigation of this incident. The two men grew up in the same neighborhood in the Oak Brook Projects and would greet each other in passing, but were not friends. (Martinez Depo. at 50-55). Martinez also attends the same church as Rodriguez's mother.

### B. Procedural History

This case is before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 45). Plaintiff responded in Opposition to Defendant's Motion (Doc. No. 52) and Defendant filed a Reply to the Response. (Doc. No. 53). Oral argument was held on August 8, 2008.

Plaintiff's initial Complaint (Doc. No. 3) was filed <u>pro se</u> in front of the Honorable Clifford Scott Green. Plaintiff moved for appointment of counsel several weeks thereafter (Doc. No. 8) and Judge Green referred the case to the Civil Rights Volunteer Panel (Doc. No. 23), where the law firm WolfBlock LLP was assigned to the case. Plaintiff's counsel filed a Revised Third Amended Complaint on his behalf (Doc. No. 34) which Defendant answered (Doc. No. 35).

On November 27, 2006, Defendant filed a Motion to Dismiss Plaintiff's case in part (Doc. No. 16). In a short order, Judge Green ruled that Plaintiff's 42 U.S.C. § 1983 claims for false arrest and false imprisonment were time-barred because the statute of limitations is governed by Pennsylvania law and the two years allowed under the statute had expired. (Doc. No. 18). On June 12, 2007, following the death of Judge Green, this case was reassigned to the undersigned. (Doc. No. 27).

### III. <u>Legal Standard</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

**IV.    Parties' Contentions**

Defendant argues that Detective Martinez had probable cause to file criminal charges against Plaintiff, and that therefore Plaintiff's claims of constitutional violations and malicious prosecution against Detective Martinez fail. Plaintiff counters that probable cause did not exist to arrest him, or, alternatively, that there is a factual dispute as to the existence of probable cause that a jury must decide.

Defendants contend that Plaintiff has not set forth any evidence to support a claim against Chief Broad for malicious prosecution because he did not have any personal involvement in the alleged wrongdoing and liability cannot be based solely on the doctrine of respondeat superior. Rode v. Dellarcipete, 845 F.2d 1195, 1207 (3d Cir. 1988) (holding that for a plaintiff to prove a superior is liable in a § 1983 action, he must show that the superior had personal involvement in the alleged wrongs). Plaintiff does not address this argument in his briefing.

Defendants assert that even if Plaintiff could prove that a constitutional violation has occurred (which they insist he cannot) Detective Martinez and Chief Broad should be afforded qualified immunity. See Karnes v. Skrutski, 62 F.3d 485, 491 (3d Cir. 1995) (holding that a police officer is entitled to qualified immunity if a reasonable officer could have believed his conduct was lawful in light of clearly established law and the information the officer possessed). Plaintiff counters that Detective Martinez acted with malice and therefore qualified immunity does not attach. Payne v. East Liberty Spear Co., 185 A. 853 (Pa. 1936) (holding that the qualified immunity defense is not available when a plaintiff can show an officer acted with malice).

Lastly, Defendants argue that Plaintiff's Monell claim fails as a matter of law because Plaintiff has failed to produce any evidence that would support a finding of liability against the

7

City of Reading. See Monell v. Department of Social Servs., 436 U.S. 658 690-95 (1978) (holding that a municipal defendant cannot be held responsible for an alleged deprivation of rights unless an official policy is responsible for the deprivation and policymakers acted with deliberate indifference). Plaintiff does not address this argument in his briefing. It is difficult to tell from the Revised Third Amended Complaint and his other pleadings whether Plaintiff intends to bring a Monell claim at all because he does not plead pattern and practice. However, Defendants assumed that Plaintiff intended to bring a Monell claim because he named the Police Department as a Defendant to the action and a claim brought pursuant to the Monell doctrine is Plaintiff's only legal remedy against the City of Reading under § 1983.

## V.     Discussion

### A.     Summary Judgment is Granted Regarding All Claims Against Chief Broad

Plaintiff has offered no evidence to support his claim that Chief Broad is liable for the constitutional violations Plaintiff alleges. As Chief Broad had no direct involvement in the investigation of the theft of Renninger's tools, the Court can only assume that Plaintiff intended to bring his claim against the Chief on a theory of supervisory liability. The Third Circuit has set out a specific test for the sufficiency of the evidence to support a claim of supervisory liability. The plaintiff must (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure." Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001). The supervisor need not be personally involved (a.k.a.

personally present) during the injurious incidents in order to be held liable: he may be held liable if he personally "participated in violating [another's] rights, or . . . directed others to violate them or . . . had knowledge of and acquiesced in his subordinates' violations." Baker v. Monroe Township, 50 F.3d 1186, 1190-91 (3d Cir. 1995); Walker v. North Wales Borough, 395 F.Supp.2d 219 (E.D.Pa. 2005). The Court emphasized that "'it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did' . . . . Rather, the plaintiff must identify specific acts or omissions of the supervisor that evidence deliberate indifference and persuade the court that there is a 'relationship between the 'identified deficiency' and the 'ultimate injury.'"" Brown v. Muhlenberg Twp., 269 F.3d at 216 (internal citations omitted).

As noted above, Plaintiff has failed to provide any evidence to support his claim against Chief Broad, and does not show specific acts or omissions by Chief Broad that would evidence the deliberate indifference required under Brown. As such, summary judgment with respect to the claim against Chief Broad will be granted.

> **B.     The Court Will Grant Defendant's Motion for Summary Judgment as to the Malicious Prosecution Claim and the Fourth Amendment Claim**

To establish a malicious prosecution claim under § 1983, Plaintiff must show that: (1) Defendant initiated a criminal proceeding; (2) the criminal proceeding ended in Plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) Defendant acted maliciously or for a purpose other than bringing Plaintiff to justice; (5) Plaintiff suffered a deprivation or liberty consistent with the concept of seizure as a consequence of a legal proceeding. Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003). It is the Court's holding that Plaintiff cannot meet

his burden as to the third element because Detective Martinez had probable cause to arrest Plaintiff, and therefore this claim will be dismissed.

The Fourth Amendment prohibits a police officer from arresting a suspect without probable cause. Paff v. Kaltenbach, 204 F.3d 425, 435 (3d Cir. 2000). Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested. Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995). "Probable cause to arrest requires more than mere suspicion; however it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." Id. at 482-83. Rather, the facts must support a reasonable belief that there is a fair probability that the person committed the crime at issue. Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000).

Courts has adopted a "totality of the circumstances" approach in assessing the existence of probable cause to issue a search warrant and identified a "common sense" aspect to the issue of probable cause." United States v. Glasser, 750 F.2d 1197, 1206 (3d Cir. 1984). Law enforcement officers are entitled to draw reasonable inferences based on their personal knowledge and prior experience. United States v. Ortiz, 422 U.S. 891, 898 (1975). The standard does not require that police officers correctly resolve conflicting evidence or that their determinations of credibility are, in retrospect, accurate. Wright v. City of Philadelphia, 409 F.3d 595, 603 (3d Cir. 2005). In challenging Detective Martinez's determination that probable cause existed, Plaintiff has the burden of showing, by a preponderance of the evidence that (1) Detective Martinez knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions in his affidavit of probable cause that created a falsehood in

applying for an arrest warrant; and (2) such statements or omissions were material to the finding of probable cause. See Merckle, 211 F.3d at 789, citing Franks v. Delaware, 438 U.S. 154, 171-72 (1978).

Generally, the question of probable cause in a § 1983 action is one for a jury. Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998). This is particularly true where the probable cause determination rests on credibility conflicts. Merkle, 211 F.3d at 788. However, a district court may conclude that probable cause does not exist as a matter of law and grant summary judgment if the evidence, viewed in the light most favorable to the plaintiff, reasonably would not support a factual finding of probable cause. Id.

The Court concludes that Detective Martinez had adequate evidence upon which to base his finding of probable cause. This evidence included: (1) a signed statement from Rodriguez asserting that Plaintiff was in possession of the tools when Rodriguez and Fisher picked him up in Weand's car; (2) Fisher's oral statement that the tools in question had been in Plaintiff's possession when he got into the car; (3) Plaintiff's presence in the vehicle where the stolen tools were recovered; (4) Renninger's undisputed claim that his tools had been stolen three hours before the incident at the Convenience Store; (5) Officers Courtesis and Jenkins' recollection of events. Detective Martinez made a judgment, based on this evidence and his seventeen (17) years of experience as a police officer, that probable cause existed to arrest Plaintiff. A neutral District Justice agreed with the decision and accordingly issued an arrest warrant. Douris v. Schweiker, 2003 WL 22533701 *14 (E.D.Pa. Oct. 21, 2003) (while a magistrate's finding that probable cause existed does not automatically bar suit, it raises a presumption that probable cause was present).

The Third Circuit has held that information from a single, apparently credible, eyewitness is sufficient to allow a police officer to form probable cause. See Merkle, 211 F.3d at 790. Detective Martinez claims that he believed Rodriguez to be a credible witness, and that he determined that, along with the corroborating statement of Fisher and Plaintiff's presence in the car, he had probable cause. Plaintiff has tried to cast doubt on Detective Martinez's credibility by pointing out that he had some prior relationship with Rodriguez before the events described in the Complaint took place. Detective Martinez admits that he and Rodriguez are acquaintances who grew up together in the same housing project and that Rodriguez's mother belongs to the same church as Detective Martinez. (Martinez Depo. at pp.50-55). However, Plaintiff presented no evidence that this relationship played a role in Detective Martinez's determination that probable cause existed to arrest Plaintiff.

At oral argument, Plaintiff argued that Detective Martinez undermined his claim that probable cause existed when he stated during his deposition "I believe they both [Rodriguez and Fisher] had what is categorized as crimen falsi, which would tell me someone who would steal, not tell the truth." (Martinez Depo. at p. 176). The term crimen falsi refers to those offenses "injuriously affecting the administration of public justice, such as perjury, subordination of perjury, suppression of testimony by bribery or conspiracy to procure the absence of a witness or to accuse one wrongfully of a crime, barratry, or the like." Jane Massey Draper, Annotation, *What Constitutes Crime Involving 'Dishonesty or False Statement' Under Rule 609(a)(2) of the Uniform Rules of Evidence or Similar State Rule–General*

*Considerations*, 82 A.LR. 2d. 359 § 3 (2000).³ The fact that Detective Martinez may have believed Rodriguez and Fisher had committed crimes in that category does not mean that he could not and did not trust their statements, however, as it is not the job of the police to engage in an extensive credibility evaluation when determining whether or not probable cause exists. See Carter, 2000 WL 1578495 at *4 (holding that probable cause existed where officer's finding was based on a tip from a paid informant who recounted several details regarding the incident incorrectly) see also Wadkins v. Arnold, 214 F.3d 535, 541 (4th Cir. 2000 ("[r]easonable law enforcement officers are not required to exhaust every potential exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established") (internal quotation omitted). Furthermore, Officer Martinez's determination was not based solely on the statements of Rodriguez and Fisher, but was also supported by the undisputed fact that Plaintiff was in the car where the items were found. Id. at 450 ("surrounding circumstances, even circumstances that appear innocent when considered alone, may provide a basis for finding probable cause").

It is therefore this Court's determination that Officer Martinez had probable cause when he arrested Plaintiff and that Plaintiff cannot meet his burden as to prong three of the malicious prosecution test.

### C. Officer Martinez Is Entitled to Qualified Immunity

Assuming arguendo that the Court concludes that a genuine issue of material fact existed as to Plaintiff's constitutional claims, the Court would grant summary judgment for

---

³ It is impossible for the Court to determine whether Rodriguez and Fisher have been convicted of crimes which would fall in the category of crimen falsi because their criminal records are not included within the records of this case.

Defendant Martinez because he is entitled to qualified immunity.  A police officer is entitled to qualified immunity if a reasonable officer could have believed that his conduct was lawful in light of clearly established law and the information the officer possessed.  Karnes v. Skrutski, 62 F.3d 485, 491 (3d Cir. 1995).  Qualified immunity shields a law enforcement official from liability who reasonably but mistakenly concluded that probable cause was present.  Hunter v. Bryant, 502 U.S. 224, 227 (1991).  An officer is only liable under § 1983 if he is plainly incompetent or knowingly violated the law.  Id. at 229.  It is the Court's job to ask whether the officers acted reasonably, under settled law, under the circumstances, not whether another reasonable or more reasonable interpretation of the events can be construed after the fact.  Id. at 228.

When a defendant asserts a defense of qualified immunity in a motion for summary judgment, as Defendants have in the instant case, the plaintiff bears the initial burden of showing that the defendant's conduct "violated some clearly established statutory or constitutional right."  Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) (internal citations omitted).  It is only after the plaintiff has met this initial burden that defendant then must "demonstrate that no genuine issue of material fact remains as to the 'objective reasonableness' of the defendant's belief in the lawfulness of his actions."  Id.

Even if Plaintiff had been able to meet his initial burden by showing Defendant had violated his constitutional rights, Defendant Martinez has successfully demonstrated that he is entitled to qualified immunity because he has shown that his conduct was objectively reasonable.  In a case such as this, a police officer loses his qualified immunity where the arrest warrant application is so lacking in indicia of probable cause as to render official belief in its

existence unreasonable. Malley v. Briggs, 475 U.S. 335, 445-46 (1986) (internal quotations omitted) (holding that where a magistrate acts mistakenly in issuing an arrest warrant but within the range of professional competence, a police officer who requested the warrant cannot be held liable under § 1983). "Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but it officers of reasonable competence could disagree on this issue, immunity should be recognized." Id.

> **D. The Court Grants Defendant's Motion for Summary Judgment Regarding Plaintiff's § 1983 Claim Against the Police Department**

When a § 1983 Plaintiff claims that a municipality has not directly inflicted injury, but nonetheless is responsible because an employee has done so, a plaintiff must show that the government's policy or custom is responsible for the injury, caused by the violation of his constitutional rights. Monell, 436 U.S. at 694. There must be a direct causal link between the policy or custom and the constitutional inquiry. Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004). Rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for actions of its employees. Board of County Com'rs of Bryan County Okl. v. Brown, 520 U.S. 397, 405 (1997).

In order to prove a § 1983 claim against the City of Reading, Plaintiff must show: (1) an underlying constitutional violation; (2) the identity of the officials or government bodies with final policymaking authority; and (3) that individuals have, through their decisions, caused the deprivation of rights at issue by policies which affirmatively command that it occur or by acquiescence in a longstanding practice or custom which constitutes the standard operating

procedure of the local government entity.  Simmons v. City of Philadelphia, 947 F.2d 1042, 1062 (3d Cir. 1991).  Plaintiff must also establish that the policy in question was the "moving force" behind the constitutional tort.  Monell, 436 U.S. at 691.  Plaintiff has presented no evidence of any policy or practice within the RPD that led to the alleged deprivation of Plaintiff's rights.  Therefore, Defendants's Motion for Summary Judgment in Plaintiff's claim against the municipality is granted.

**VI.     Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.

An appropriate order to follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN COPELAND, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| READING POLICE DEPARTMENT, | : | NO. 06-4267 |
| CHARLES BROAD, & | : | |
| IVAN MARTINEZ | | |

**ORDER**

And now, this 21st day of August, 2008, for the reasons stated in the foregoing memorandum, and after considering the briefs and oral argument, the Court GRANTS the Defendant's Motion for Summary Judgment (Doc. No. 45), and enters judgment in favor of Defendant and against the Plaintiff. The Clerk shall close this case.

BY THE COURT:

s/Michael M. Baylson

_____
Michael M. Baylson, U.S.D.J.

O:\Dana\Copeland v. Reading\Copeland v. Reading Memo and Order.wpd